[Crim No. 13217.    Second Dist., Div. One.    Nov. 17, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ELLWOOD DAY, Defendant and Appellant.

84

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Anthony S. Dick, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of four counts of armed robbery and an attempted appeal from an order denying a motion for a new trial.

In an information filed in Los Angeles on August 12, 1966,

defendant was charged in count I with robbing Albert Robbins of certain personal property on or about July 20, 1966, and it was charged that at the time of the commission of the offense defendant was armed with a deadly weapon, namely, a knife; in count II defendant was charged with robbing Louis J. Seigel on July 10, 1966, while armed as stated in count I; in count III with robbing Frank Ptashne on June 24, 1966, while armed as stated in count I; and in count IV with robbing Archie C. Sweazea on May 27, 1966, and it was charged that at the time of the commission of the offense defendant was armed with deadly weapons, namely, a knife and a revolver. Defendant pleaded not guilty. In a jury trial defendant was found guilty on each count as charged in the information and it was found that he was armed in each instance as charged. The robbery, in each count, was found to be in the first degree. Defendant was sentenced to the state prison, the terms to run consecutively. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: COUNT I: On July 20, 1966, at about 9:30 a.m. defendant walked into Albert Robbins' Liquor store on La Brea Avenue in Los Angeles, and after some discussion about a liquor transaction defendant grabbed Robbins and stuck a knife toward his ribs and said, ''Don't move, you ———— [an obscenity] or I'll kill you.'' Robbins was directed to lie down and not to move and he did so out of fear. Defendant took Robbins' cash in the amount of about $240, and a camera. The knife which defendant wielded was left on the counter of the store. Robbins saw defendant in a police lineup and at the trial, and identified him as the robber.

COUNT II: On July 10, 1966, at about 8 a.m. Louis Seigel opened the liquor store (where he worked) on La Brea Avenue. Shortly thereafter defendant walked in and said, ''This is a holdup. Make one mismove and I will run this through you.'' while exhibiting a knife to Seigel. Defendant ordered Seigel to open the cash register and then forced Seigel to lie on the floor with his hands and arms outstretched. Defendant took about $160 from the register, a watch, a carton of Kool cigarettes, and then ripped the telephone out and ran from the store. The knife displayed by defendant was the same knife as used in the July 20, 1966, robbery of Robbins. Defendant was described to the police and was identified by Seigel in a police lineup and at the trial as the robber. At the time of trial, Seigel recognized the

blue sweater defendant was wearing as being the same sweater which defendant wore at the time of the robbery. A fingerprint expert found the fingerprints of defendant on the cash box of the store.

COUNT III: On June 24, 1966, at about 10:30 a.m. Frank Ptashne was filling a cigar case in the liquor store on San Vicente Boulevard in Los Angeles where he was employed. He felt something sticking in his back, turned around and saw defendant standing there holding a knife. Defendant told Ptashne to get up and make no noise and then forced him to open the register and to lie down on the floor. A salesman came into the store and made inquiry about where Ptashne was and defendant related that Ptashne had just stepped out for a few minutes. The salesman saw Ptashne on the floor and perceived what was taking place, whereupon defendant approached the salesman with the knife in hand. The salesman, by making a commotion, alerted a neighbor to the fact that a robbery was in the course of being committed and the police were called. Defendant, in an attempt to open a drawer where money orders were kept, dropped the knife and left with about $139 which he obtained in the robbery. Ptashne saw defendant in a police lineup and at the trial and identified him as the robber.

COUNT IV: On May 27, 1966, at about 1:15 p.m. Archie Sweazea operated a jewelry shop on West Olympic Boulevard in Los Angeles. Defendant entered the store and talked about some watch repairing and then left the store. In about 30 minutes defendant came back to the store and as Sweazea was filling out a ticket to put on a watch defendant grabbed him and announced that it was a ''stick up'' and pulled from his pocket what appeared to be a steak knife. Sweazea attempted to get away and defendant went over the counter toward him and there was a struggle. Sweazea lost consciousness for a time and when he revived he looked and saw defendant going through the cash register. Sweazea had a revolver on a table which defendant picked up and pointed at Sweazea and said, ''You intend to shoot me. I should let you have it.'' At about that time a customer came into the store and Sweazea ran out to the sidewalk and shouted, ''Help. Get the police.'' Defendant ran from the store with the gun in his hand and with about $70 taken in the robbery. A fingerprint expert found defendant's prints on a showcase in the store.

Defendant testified that he was not the robber on any of the above occasions, that he was elsewhere, and that the money he

had in his posession was won from shooting pool and playing dice.

Appellant now asserts that the evidence was insufficient to support the judgment in any count and that the jury was not properly instructed as to the definition of a deadly weapon.

We view the matter as an appellate court. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Hillery*, 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].)

The evidence with reference to each count was amply sufficient. The jury believed the persons who were robbed and disbelieved the appellant. In each instance appellant feloniously took personal property from the possession of another against the will of that person and by means of force or fear while he, appellant, was armed with a dangerous or deadly weapon. Appellant was positively identified as the robber and in two instances his fingerprints or palm prints supported the charges.

Appellant seemingly asserts that the trial judge on his own motion should have given an instruction which, in effect, would have required a specific finding by the jury as to the length of the knife blade in question in order to satisfy the definition of a deadly weapon under Penal Code section 3024, subdivision (f). No authority is cited to support the assertion.

There is direct evidence that the knife used in the robbery referred to in count I had a blade in excess of 5 inches in length and the knife was introduced into evidence. The same knife was used in the robbery referred to in count II. The knife used in the robbery referred to in count III was a steak knife. It is a fair inference that a steak knife has a blade in excess of 5 inches in length and had there been the slightest doubt about it such an indication of doubt could have been brought to the attention of the court or jury at the time of trial. In the robbery referred to in count IV, the appellant also used a steak knife and the victim's own revolver. No instruction on the subject was requested by appellant and the court was not required to give such an instruction on his own motion.

The judge is not required to give instructions on specific points developed at the trial unless requested to do so. (*People* v. *Wade*, 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Allison*, 245 Cal.App.2d 568, 572-573 [54 Cal. Rptr. 148].) Failure to request such an instruction constitutes a waiver and a complaint that the instruction was not given cannot be raised for the first time on appeal. (*Peo-*

*ple* v. *Robinson,* 180 Cal.App.2d 745, 752 [4 Cal.Rptr. 679]; *People* v. *Lombardi,* 205 Cal.App.2d 803, 805 [23 Cal.Rptr. 325].)

In any event, there was no miscarriage of justice in this case. (Cal. Const., art. VI, § 13.)

Appellant has filed what is denominated a supplemental brief prepared apparently by himself. The so-called supplemental brief is vague and ambiguous but generally appellant seems now to assert that his arrest was made without probable cause and was unlawful. There is nothing in the record before this court with reference to any illegal arrest—the issue of illegality of arrest was apparently not brought up at the preliminary hearing and it was not mentioned or suggested at the time of or during the trial. ■■ The validity of a conviction is unaffected by an unlawful arrest (even if this were an illegal arrest) if the conviction is supported by legally admissible evidence. (*People* v. *Valenti,* 49 Cal.2d 199, 201 [316 P.2d 633]; *Frisbie* v. *Collins,* 342 U.S. 519, 522 [96 L.Ed. 541, 545-546, 72 S.Ct. 509].) ■■ In any event, the contention cannot be raised for the first time on appeal. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Valdez,* 239 Cal.App.2d 459, 465 [48 Cal. Rptr. 840].)

Appellant, individually, asserts that the judge was prejudiced against him. The record belies such assertion; the contrary is true, for the judge was scrupulously fair throughout the entire proceedings.

Appellant also has raised certain complaints about matters which are completely outside of the record and require no action by the court.

The trial in this case was proper and fair to appellant. He was convicted by overwhelming evidence of his guilt.

The judgment is affirmed. The purported appeal from the order denying motion for a new trial is dismissed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 4, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 11, 1968.