[Crim. No. 15212. In Bank. May 12, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE LEE TRIBBLE, Defendant and Appellant.

**COUNSEL**

Willie Lee Tribble, in pro. per., and Philip Jefferson, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—(1) The principal issue considered in this opinion is when the specific intent to rob must be formed in relation to the seizing of the victim in order to constitute a violation of Penal Code section 209 (kidnaping for the purpose of robbery) in those offenses which took place after the 1951 amendment to said code section. We have concluded that the intention to commit robbery must be present at the time of the original asportation.

A jury found defendant guilty of robbery in the first degree (Pen. Code, §§ 211, 211a), kidnaping to commit robbery with bodily harm (Pen. Code, § 209), and oral copulation (Pen. Code, § 288a). It fixed the penalty for the kidnaping at life imprisonment without possibility of parole. Defendant appeals from the judgment entered on the verdicts.

*Facts*

About 10:50 p.m. on January 19, 1969, the victim arrived at the Los Angeles International Airport from Canada en route to the Philippines. To continue her trip she had to go from the American Airlines terminal to the Japan Airlines terminal. She was unable to find a taxi and therefore accepted the offer of a man who approached her to have a friend drive her to the Japan Airlines terminal. The friend, later identified as defendant, drove up and the other man and the victim got in the car. Defendant drove away from the airport, refused to allow the victim to leave the car, and finally parked the car in a dark area. The two men then forced the victim to orally copulate and masturbate each of them. Each then raped her.[1]

---

[1] Defendant was not charged with rape, apparently because the victim's testimony before the grand jury that indicted defendant was not so explicit with respect to that offense as was her testimony at the trial.

Defendant's companion told her that he had a knife in the glove compartment of the car and would kill her if she did not cooperate.

After the sex offenses were completed, defendant resumed driving. The victim tried to induce the men to take her back to the airport, but instead they took her luggage and the money from her handbag, and finally let her out of the car at an isolated place. As they drove away she was able to read the license number of the car. A passerby drove her to a police station, and she told the officers what had happened. From the license number the officers determined the name and address of the owner. They went to the address about 1:45 a.m. and saw the car parked in the driveway. On its top was a red photograph album that the victim had reported was taken from her. The officers then entered defendant's apartment and arrested him. Within the apartment they found the other personal property taken from the victim. Apparently the other man involved in the crimes was never apprehended.

### Kidnaping

The court instructed the jury that "An essential element of the crime of Kidnapping for the Purpose of Robbery is that the defendant had the specific intent to commit said robbery at any time during the course of the kidnapping. This intent must be a motivating purpose of the action, although it need not be the only such purpose. [Par.] To constitute the crime of Kidnapping for the Purpose of Robbery, it is not necessary that the perpetrator shall have intended to commit robbery at the time of first contacting the complaining witness. It is sufficient even if the intent to commit robbery was formed later but during the progress of the kidnapping."

These instructions are in accord with the holding in *People* v. *Brown* (1947) 29 Cal.2d 555, 558 [176 P.2d 929]. That holding, however, was based on the language of section 209 as it read before its amendment in 1951.[2] At that time section 209 included any person "who holds or detains

---

[2]Section 209 then provided: "Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or robbery or to exact from relatives or friends of such person any money or valuable thing, or who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the State prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm."

[the victim] . . . to commit extortion or robbery." Accordingly, the court stated that the "section makes it unnecessary to determine whether the kidnaper intended to commit extortion or robbery at the time of the original seizure or carrying away. It is sufficient if the extortion or robbery was committed during the course of the abduction. Thus, whatever may have been the original motive of the kidnaping, if the kidnaper commits extortion or robbery during the kidnaping, he 'holds or detains' his victim 'to commit extortion or robbery' within the meaning of section 209." (29 Cal.2d at p. 558.)

Subsequently, in *People* v. *Knowles* (1950) 35 Cal.2d 175, 180-181 [217 P.2d 1], the court extended the holding in *Brown* and concluded that section 209 did not require any asportation of the victim and that therefore even a "standstill" robbery could be punished under its terms. (See *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225].) Thereafter, in 1951, the Legislature amended section 209 and abrogated the rule of the *Knowles* case.[3] The section no longer covers a person who "seizes, confines, inveigles, entices, decoys, abducts [or] conceals . . . any individual . . . with intent to hold or detain, or who holds or detains, such individual . . . to commit . . . robbery." ■ ■ Insofar as robbery is concerned, the section now applies only to "any person who kidnaps or carries away any individual to commit robbery."

The 1951 amendment did more than make asportation an element of the crime of kidnaping to commit robbery. It also abrogated the rule of the *Brown* case. A person could not kidnap and carry away his victim to commit robbery if the intent to rob was not formed until after the kidnaping had occurred. As the court stated in *People* v. *Smith* (1963) 223 Cal. App.2d 225, 234 [35 Cal.Rptr. 719], in condemning instructions essentially the same as those given in this case, both the *Brown* case and the *Knowles* case "preceded the 1951 amendment when detention alone was

---

[3] As amended in 1951, section 209 provides: "Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps, or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from relatives or friends of such person any money or valuable thing, or any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the state prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnaping suffers or suffer bodily harm or shall be punished by imprisonment in the state prison for life with possibility of parole in cases where such person or persons do not suffer bodily harm.

"Any person serving a sentence of imprisonment for life without possibility of parole following a conviction under this section as it read prior to the effective date of this act shall be eligible for a release on parole as if he had been sentenced to imprisonment for life with possibility of parole."

sufficient to constitute kidnapping for purpose of robbery and no asportation was required. [Par.] . . . [A]n additional effect of the change in the statute is to make it necessary for the trier of fact to determine whether the kidnaper intended to commit robbery at the time of the original seizing. In this respect the crime is similar to burglary where it is necessary to show that the entry was with the intent to commit larceny or any felony. An illegal entry but without such an intent is not a burglary (*People* v. *Jenkins,* 16 Cal. 431); similarly since the 1951 amendment to section 209, kidnapping without intent to rob constitutes kidnapping but not kidnapping for purpose of robbery; and a robbery during a kidnapping where the intent was formed after the asportation is a robbery and not a kidnapping for purpose of robbery." (Per Burke, P. J.; accord: *People* v. *Lindsay* (1964) 227 Cal.App.2d 482, 508-510 [38 Cal.Rptr. 755].) *In re Ward* (1966) 64 Cal.2d 672, 676 [51 Cal.Rptr. 272, 414 P.2d 400], is not to the contrary, for the court was there considering crimes that were committed before the 1951 amendment to section 209. *People* v. *Paxton* (1967) 255 Cal.App.2d 62, 72 [62 Cal.Rptr. 770], and *People* v. *Gomez* (1967) 252 Cal.App.2d 844, 859 [60 Cal.Rptr. 881], are not persuasive, for neither case considered the impact of the 1951 amendment. To the extent that they are inconsistent with our decision herein they are disapproved.

■ In the present case defendant was entitled to have the jury determine whether he intended to commit robbery at the time the kidnaping commenced or whether the intent to commit robbery was an afterthought to a kidnaping that was sexually motivated. The instructions took this issue from the jury, and the error was therefore prejudicial. (*People* v. *Smith, supra*; *People* v. *Lindsay, supra.*)

### Other Contentions

Defendant contends that the victim's personal property seized in defendant's apartment was illegally obtained on the ground that the arresting officers did not demand admittance and explain their purpose before entering the apartment.[4] Officer Moen, one of the arresting officers, located defendant's apartment through the license number supplied by the victim. He saw the car, which was a Rambler registered in defendant's name, in the driveway and found defendant's name on the mailbox of apartment No. 3. He found a photograph album that the victim had reported as having been taken from her on top of defendant's car. He called for assistance and waited in his police car parked on the street. He then saw two men in a Volkswagen that had been parked in the driveway near defend-

---

[4]Penal Code section 844 provides: "To make an arrest, . . . a peace-officer, may break open the door . . . of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

ant's apartment. The Volkswagen started to back out and then drove rapidly forward and stopped. Additional officers had then arrived, and they went to the Volkswagen, arrested its occupants, and recovered a gun. Officer Moen then went to the door of defendant's apartment where he heard what sounded like running footsteps. Another officer forced the door open, and Officer Moen entered with his gun drawn.

■ Compliance with the demand and notice requirements of section 844 is excused if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence. (*People* v. *Gastelo* (1967) 67 Cal.2d 586, 587-588 [63 Cal.Rptr. 10, 432 P.2d 706]; *People* v. *De Santiago* (1969) 71 Cal.2d 18, 23-29 [76 Cal.Rptr. 809, 453 P.2d 353].) In the present case, the violent character of the crimes involved, the victim's report that her assailants had a knife, the recovery of a gun from the Volkswagen, and the sound of running footsteps within fully justified Officer Moen's stated belief that "I felt that there was a possibility of bodily injury to myself or my partner if we hesitated." Compliance with section 844 was therefore excused.[5]

■ Defendant contends that a lineup at which he was identified by the victim a few hours after his arrest was unduly suggestive because he was noticeably trembling at the time. It does not appear, however, that defendant was the only person in the lineup who was nervous or trembling, and all of the participants were Negroes of the same approximate age and height. Although the victim testified that she noticed that defendant was trembling, she also testified that from seeing his face facing her in the lineup she was positive that he was one of her assailants. The evidence supports the trial court's conclusion that the lineup was fair.

■ Although defendant expressly waived his right to counsel at the lineup, he contends that under the decisions in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], the waiver was ineffective because he was not informed of the purpose of the lineup. We find nothing in those cases, however, that requires that a de-

---

[5]Since the search of defendant's apartment and the seizure of the victim's property therefrom took place before the decision of the United States Supreme Court in *Chimel* v. *California* (June 23, 1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], their lawful scope incident to defendant's arrest was not limited by that decision. (*Williams* v. *United States* (1971) 401 U.S. 646 [28 L.Ed.2d 388, 91 S.Ct. 1148, 1151, 1159]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1108 [80 Cal.Rptr. 633, 458 P.2d 713].)

fendant be informed of the obvious purpose of a lineup, namely possible identification, before the right to counsel at a lineup may effectively be waived. (See also *People* v. *Wells* (1971) 14 Cal.App.3d 348, 354 [92 Cal.Rptr. 191].)

■  Defendant contends that the victim was an accomplice to the violation of section 288a of the Penal Code, that there was no corroboration of her testimony that he committed that offense (see Pen. Code, § 1111), and that the trial court erred in failing to instruct on the law of accomplices. The undisputed evidence shows, however, that the victim participated in defendant's violation of section 288a solely because of fear of great bodily harm or death. Accordingly, she was not an accomplice to the commission of that crime. (*People* v. *Chessman* (1951) 38 Cal.2d 166, 183 [238 P.2d 1001]; *People* v. *Anderson* (1968) 264 Cal.App.2d 271, 274-276 [70 Cal.Rptr. 231], and cases cited.)

■  Finally defendant contends that the evidence does not support the finding that the robbery was of the first degree. We agree with this contention. Section 211a of the Penal Code provides: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, and the robbery of any person [operating a transit vehicle] . . . , is robbery of the first degree. All other kinds of robbery are of the second degree." Since the robbery was not perpetrated by torture and since the victim was not a transit operator, the finding that the robbery was of the first degree can only be sustained if there is substantial evidence that defendant or his confederate was armed with a deadly or dangerous weapon. There is no evidence that any such weapon was found in defendant's car or seen in the possession of either assailant. The only evidence that there was such a weapon was the testimony of the victim that defendant's confederate threatened to kill her with a knife which he said was in the glove compartment of the car. We do not believe that this threat to use a weapon, the existence of which was never proved, constitutes substantial evidence that either defendant or his confederate was armed. (See *People* v. *Bassett* (1968) 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777]; *People* v. *Lain* (1943) 57 Cal.App.2d 123, 133 [134 P.2d 284].) Since there is abundant evidence, however, that defendant was guilty of robbery of the second degree, the error in finding him guilty of robbery in the first degree may be corrected by modifying the judgment. (Pen. Code, § 1181, subd. 6.)

That portion of the judgment convicting defendant of violation of section 209 of the Penal Code is reversed. The sentence imposed by the judgment for violation of Penal Code section 211 is modified by reducing the degree

of the robbery to robbery of the second degree. As so modified, the judgment in all other respects is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.