[Crim. No. 19746. Second Dist., Div. Five. Dec. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE DAVE SMITH, Defendant and Appellant.

**COUNSEL**

Helen Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Geoffrey S. Cantrell, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—By information, defendant was charged in count I with kidnaping for the purpose of robbery (Pen. Code, § 209); in count II, with violation of Penal Code section 288a; and in count III, with rape by threat of bodily harm (Pen. Code, § 261, subd. 4). It was further charged in each count that defendant was armed with a deadly weapon, a knife, at the time of the offense. He pleaded not guilty. A jury found defendant guilty as charged on each count, and found the allegations that defendant was armed to be true. Criminal proceedings were adjourned, and a diagnostic study was ordered pursuant to Penal Code section 1203.03. Criminal proceedings resumed, and defendant was sentenced to state prison on each count. Section 1168 of the Penal Code was invoked. Defendant appeals from the judgment.

At about 11 p.m. on February 28, 1970, defendant approached Rose L. as she was getting out of her car at 108th and Denker, Los Angeles. He had a "big" knife or blade with a reddish-brown handle in his hand. Defendant threatened to kill Mrs. L. with the knife. He ordered her to get back into her car. Mrs. L. stated that she was waiting for a friend, who was at the rear of a nearby house. Defendant then ordered Mrs. L. out of the car, and when she failed to comply, he pulled her out. She struggled with him. She could feel the blade of the knife against her stomach. Defendant dragged her toward a car parked down the street from where hers was parked. He was joined by a second man, one Washington.[1] Both

---

[1] Washington was tried separately from defendant, and is not a party to this appeal.

defendant and Washington struck her on the head and elsewhere, defendant using the handle of the knife. They dragged her to a brown Corvair automobile and forced her inside. They threatened to kill her if she did not stop screaming. Inside the car were a diaper pail and a pillowcase full of clothes.

After driving around for a time, the men directed Mrs. L. to get into the back of the car. Defendant told her to lie down, and when she did so, he placed the pillowcase over her head and told her not to move. They drove to a garage. One of the men took her purse, and they went through it. The purse contained a $5 bill, a gasoline credit card, and her driver's license. Washington said that he was disappointed that she only had $5; that she looked as though she would have more money. Defendant said that perhaps they could use the credit card. Defendant, still holding the knife, then ordered Mrs. L. out of the car. The two men conferred. Washington then told Mrs. L. that because she did not have enough money and did not have the amount of money they had hoped she would have, she would "have to make up for it" by doing something else for them. Washington unzipped the top of Mrs. L.'s suit and jerked off her brassiere. He said that he thought she might have some money inside her brassiere, and was disappointed that she did not. He said that since she had only $5, she had no choice; that she would have to submit if she did not want to die. Both men then forced her to have intercourse with them and to orally copulate them. Defendant had intercourse with her more than two times, and she orally copulated him at least twice.

Afterwards, Mrs. L. was told to get dressed. She was blindfolded, driven to an unfamiliar location, and released. She went to a nearby house and telephoned the police. While in the garage, Mrs. L. had noted the license number of the Corvair. She gave it to the police, along with a description of her assailants.

Mrs. L. identified photographs of defendant and Washington from a group of 40 photographs she was shown about two weeks after the incident.

In custody, defendant was interviewed on April 5, 1970, by Deputy Portney. The officer first advised defendant of his constitutional rights. Defendant stated that he would discuss the case without a lawyer. Defendant stated that he and Washington were together on February 28, 1970, and that they had taken some clothes, along with a diaper pail, with them. Washington had dropped defendant off at his home at about 11 p.m. Defendant found no one else home, and went out to see some friends. It

was raining, and he got drenched. He did not find any of his friends, and eventually returned home.

Defendant called Mrs. L. as his witness. She testified that it was not raining at any time during the incidents she described, though it had rained the day before and there may have been sprinkles during that day. Counsel stipulated that weather bureau records showed that there was no rain on February 27, and that it rained in Los Angeles at 8, 9 and 10 p.m. on February 28, 1970 (the date of the offense); that it did not rain thereafter until 9 a.m. the following day (March 1, 1970).

Defendant testified in his own behalf that he was arrested on April 4, 1970. In his conversation the next day with Deputy Portney, he tried to remember as best he could whether he had been with Washington on February 28, 1970. He knew that he had been with him on a weekend, but was unsure of the date, although defendant remembered it was raining. He and Washington went to a laundromat; the clothes to be washed were in a pillowcase. He thought he and Washington parted company around 8 p.m. He went out again and came back home about 9 p.m. His mother and another woman were present. He did not think that he went out again that night. He never raped or robbed Mrs. L.

On this appeal, defendant contends: (1) that the evidence was insufficient to sustain his conviction on count I; (2) that the jury was inadequately instructed on the specific intent necessary to sustain a conviction on count I; and (3) that the evidence was insufficient to sustain the finding that defendant was armed with a deadly weapon, as alleged.

█ In support of the first contention, defendant urges that the kidnaping was sexually motivated and that the robbery was merely incidental thereto. There is ample evidence in the record, however, to sustain the jury's finding to the contrary. According to the victim's testimony, her assailants' first concern was money. It was only when they became disappointed because she had so little money that they turned to sexual gratification as compensation for their disappointment. (*People* v. *Beaumaster,* 17 Cal.App.3d 996, 1004-1008 [95 Cal.Rptr. 360].)

█ Defendant's contention that the jury was inadequately instructed on the issue of specific intent is likewise devoid of merit. The jurors were instructed on the definition of kidnaping for the purpose of robbery. (CALJIC No. 9.23.)[2] They were instructed that a specific intent to rob the victim was an element of that crime. (CALJIC No. 3.31.) They were in-

---

[2]The instruction met the standards set forth in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225].

structed that circumstantial evidence of that intent was sufficient proof, but only if the evidence was irreconcilable with any other rational conclusion. (CALJIC No. 2.02.) Finally, they were instructed that kidnaping was a lesser, included offense of kidnaping for the purpose of robbery, and were given definitions of simple kidnaping. (CALJIC Nos. 17.10; 9.20; 9.21.) These instructions were sufficient to insure that the jury would not find defendant guilty of kidnaping for the purpose of robbery unless they found that the intent to rob the victim motivated the kidnaping. (*People* v. *Tribble,* 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 584].)

■ Defendant is on stronger ground in urging that the evidence is insufficient to sustain the finding that defendant was armed with a deadly weapon. Under Penal Code section 3024, a knife constitutes a deadly weapon only if it has a blade of more than 5 inches in length. The only description of the knife in the record is the victim's testimony that defendant possessed a "big knife or a blade of some kind." She was not asked to estimate its length, and the knife was not admitted in evidence. The People argue that the victim's description was sufficient to permit the jury to conclude that the blade was more than 5 inches long. For this proposition, the People rely on *People* v. *Day,* 256 Cal.App.2d 83, 87 [63 Cal. Rptr. 677]. In *Day,* defendant was convicted of four counts of armed robbery. It was found that he was armed with a knife during the commission of three of the offenses, and with a knife and a revolver during the commission of the fourth. The knife used by Day in counts I and II was admitted into evidence, thus enabling the jury to establish the length of the blade; in this particular, *Day* is distinguishable from the case before us. The knife used by Day in counts III and IV was described as a steak knife. The court ruled that it was reasonably inferable that the blade of a steak knife would exceed 5 inches in length. We question that such an inference may validly be drawn, and even in *Day,* that conclusion was weakened by the court stating (at p. 88): "In any event, there was no miscarriage of justice in this case. (Cal. Const., art. VI, § 13.)" In any event, reliance by the People on *Day* is misplaced since no effort was made in the instant case to classify the type of knife defendant used. If, for instance, it was a "big" pocket knife, the blade might well have been shorter than 5 inches.

The People further argue that even if the evidence is insufficient to establish that the knife blade exceeded 5 inches, since defendant struck the victim with the handle of the knife, it might qualify as a metal bar used or intended for use as a club, also classified as a deadly weapon under section 3024. (*People* v. *Tobin,* 143 Cal.App.2d 1, 9, 10 [299 P.2d 353].) *Tobin* involved a meat cleaver, which, again unlike the weapon in the

instant case, was admitted into evidence. The defendant in *Tobin* urged that a meat cleaver did not fall within the definition of "knife" in section 3024, even though it possessed a blade more than 5 inches long. The court held that the cleaver was encompassed within the section 3024 definition of "knife." The further statement in *Tobin* that the cleaver could also be considered a metal bar is merely dictum.

In the instant case, the information charged that defendant had in his possession a knife. While the jury instruction defining a "deadly weapon" enumerated all of the weapons mentioned in section 3024, the immediately preceding instruction specified that the charge against defendant was that he possessed a knife. In the light of the information, the overall import of the instructions given leads to the inevitable conclusion that the jurors reached the decision that defendant was armed with a knife, not with a metal bar or other club. Since we find the evidence insufficient to sustain the finding, the allegation that defendant was armed must be stricken from the judgment.

Furthermore, we find that imposition of sentences on both counts II and III was not violative of the double punishment provisions of Penal Code section 654. (*People* v. *Armstrong,* 268 Cal.App.2d 324 [74 Cal.Rptr. 37]; see also *People* v. *Hicks,* 63 Cal.2d 764 [48 Cal.Rptr. 139, 408 P.2d 747]; *People* v. *Hurd,* 5 Cal.App.3d 865 [85 Cal.Rptr. 718].)

The judgment is modified by striking therefrom the words "and the defendant was armed as alleged in each of said counts I, II, and III of the information."

As so modified, the judgment is affirmed.

Aiso, J., and Reppy, J., concurred.