[Crim. No. 4189. Fourth Dist., Div. Two. June 29, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID IVERSON, Defendant and Appellant.

600

## Counsel

Gary E. Gunderman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Mark L. Christiansen, Alexander B. McDonald, Jay D. Coulter and Elaine A. Alexander, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**GABBERT, Acting P. J.**—Appellant David Iverson was found guilty (count II) by a jury of violating Penal Code, section 261, subdivision 3 (forcible rape); guilty of (count III) a violation of Penal Code, section 261, subdivision 4 (rape by threat of great and immediate bodily harm); and guilty of (count VI) a violation of Penal Code, section 207 (kidnaping). Appellant was found not guilty of (count VII) violating Penal Code, section 459 (burglary). On his plea of not guilty by reason of insanity, the jury found appellant to have been sane at the time of the commission of the three offenses. Appellant was sentenced to state prison for the term provided by law on count II (rape by force), on count III (rape by threat) and on count VI (kidnaping). As to the latter two counts (III and VI) the jury found appellant was armed with a deadly weapon

in the commission of the offenses. The court ordered execution of sentence stayed on counts III and VI pending any appeal, and ordered that upon completion of appellant's service of sentence on count II, execution on counts III and VI was to be permanently stayed. This appeal is from the judgment of conviction.

For a period of four or five months, defendant had been dating the grandmother of Ms. J., a 15-year-old girl. About 2 a.m. on October 3, 1969, Ms. J. awakened and saw appellant standing by her bed. Appellant asked where the grandmother was. When Ms. J. answered that she did not know, appellant took a knife from his pants and asked again where the grandmother was. Although there was a telephone in the kitchen of the apartment in which Ms. J. lived, appellant told her he was going to take her to a nearby corner so that she could call the grandmother. Ms. J.'s mother and younger brother were sleeping in the apartment at the time. Although Ms. J. could smell alcohol on appellant's breath, she had no trouble understanding him.

Appellant, holding Ms. J.'s arm as well as the knife, forced her to leave the apartment and enter an automobile. In the car, appellant pulled Ms. J.'s head down by his leg and held her down with his arm and elbow over her head and with the knife at her neck. For about 10 or 15 minutes appellant drove around; he seemed to have no difficulty in driving at that time. Appellant eventually stopped the car and stated he had changed his mind about calling the grandmother. After the auto had stopped, appellant engaged in three separate acts of intercourse with Ms. J. During this time, as Ms. J. testified, appellant had a hand over her neck and a knife behind her neck.[1]

Ms. J. asked appellant not to hurt her and promised not to tell if appellant would take her home. On the way home appellant stated, "I know I've committed the biggest sin of all." After arriving at home, Ms. J. immediately awakened her mother, and the police were called. A pelvic examination conducted on Ms. J. showed a tear of the hymen, a fresh blood clot on the entrance to the vagina, and the presence of seminal fluid and spermatozoa inside the vagina.

---

[1] In the information, appellant had also been charged with (counts IV and V) two counts of violating Penal Code, section 288a. The evidence disclosed appellant also put his mouth down by Ms. J.'s vagina, and asked her to orally copulate him. At the close of the People's case, however, the trial court ruled the evidence taken as a whole was insufficient, and granted appellant's motion to dismiss on the two counts involving Penal Code, section 288a. On a motion by the People, the court also dismissed one count (count 1) of violating Penal Code, section 261, subdivision 1 (unlawful intercourse with a female under the age of 18), in the interest of justice.

Appellant's automobile was located shortly thereafter at his place of business. A knife, like the knife Ms. J. had observed appellant carrying, was found nearby. Appellant was found asleep in his automobile. When he was arrested the zipper on his pants was lowered. A chemical examination of his undershorts revealed seminal stains and spermatozoa. Later the same day, Ms. J.'s mother noticed the screen had been pulled out of the window in her apartment. She also found a greasy footprint on a pillow and grease on a couch directly below the window. Appellant testified he worked at an auto repair garage which had grease on the floor.

In his defense, appellant testified that he had drunk alcoholic beverages steadily for two days prior to the alleged offenses. He testified that between October 1 and the time he was found asleep by the police in his car, he had drunk 10 to 15 vodka drinks, 10 to 15 glasses of cognac, over 20 beers and had ingested three "reds" and seven "whites." Appellant testified he had been drinking in several bars on the evening of October 3 and finally went to his car and went to sleep.

On this appeal, appellant contends the trial court erred in entering a judgment of conviction on one count of rape by force and one count of rape by threat for a single act of intercourse. He asserts the evidence is insufficient to support the jury's determination he committed rape by force. He also contends the trial court erred in its instructions to the jury by improperly defining the term "deadly weapon." Finally, he argues the conviction of kidnaping was improper under the test of *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].

■ We may pass quickly appellant's first two contentions. The evidence clearly discloses appellant engaged in three separate acts of intercourse with Ms. J. Thus, the trial court did not, as appellant alleges, enter a judgment of conviction on the count involving rape by force and the count involving rape by threat for a single act of intercourse. The contention the evidence is insufficient to support the conviction of rape by force borders on the frivolous. Ms. J. testified she kept begging appellant not to have intercourse with her but complied because she was "so scared." Moreover, during the three acts of intercourse, appellant held a hand over Ms. J.'s neck and a knife under her neck. We cannot say this evidence is insufficient to support the jury's determination of forcible rape. (See *People* v. *Frye,* 117 Cal.App.2d 101, 105-106 [255 P.2d 105], and cases cited therein.)

■ Appellant is correct, however, in his contention the jury was improperly instructed as to the meaning of the phrase "deadly weapon." Under Penal Code, section 3024, providing for a minimum sentence for

offenses involving the use of a deadly weapon, a knife constitutes a deadly weapon only if the blade is more than five inches in length. The jury was only instructed, however, that a deadly weapon was any weapon, instrument or object capable of being used to inflict death or great bodily injury.

For a defendant to suffer the minimum terms specified by Penal Code, section 3024, the fact the defendant was armed with a deadly weapon must be charged in the accusatory pleading (Pen. Code, § 969c), and the question of whether he was so armed must then be tried by the trier of fact which tries the issue of the substantive offense. (Pen. Code, § 3024, subd. (e); *People* v. *Burns*, 270 Cal.App.2d 238, 254-255 [75 Cal.Rptr. 688]; see *People* v. *Smith*, 22 Cal.App.3d 197, 202-203 [99 Cal.Rptr. 192].)

Appellant did not object to the instruction given, however, and did not offer the correct definition as an instruction. Under these circumstances, we could hold any objection was waived and may not be raised for the first time on appeal. (*People* v. *Day*, 256 Cal.App.2d 83, 87-88 [63 Cal. Rptr. 677]; *People* v. *Lombardi*, 205 Cal.App.2d 803, 805 [23 Cal.Rptr. 325; *People* v. *Robinson*, 180 Cal.App.2d 745, 752 [4 Cal.Rptr. 679].) It has been held an instruction defining deadly weapon in the terms of section 3024 is not one which must be given *sua sponte*. (*People* v. *Day*, *supra*.)

On the other hand, however, the editors of CALJIC have stated such an instruction *should* be given *sua sponte*. (CALJIC (3d ed.) No. 17.17, p. 557.) The case upon which CALJIC relies, *People* v. *Caberera*, 104 Cal.App. 414 [286 P. 176], does not necessarily support that interpretation: we cannot determine from the case as reported whether such an instruction was requested and refused, or never requested.

We need not resolve the conflict here, however; even assuming the instruction should have been given *sua sponte,* the error was not prejudicial. Pursuant to rule 10(b), California Rules of Court, we have examined the knife introduced as People's Exhibit 3. The blade thereon is five and one-half inches in length. Given the length of the knife, we cannot conclude that, under a proper instruction as to the meaning of deadly weapon, the jury could have reached any other conclusion than that the knife was a deadly weapon.

Nor are we moved to a contrary conclusion because the knife was described by Ms. J. only as ". . . like the knife Dave had." The knife was found a short distance from appellant's car, and the jury in its determination appellant was armed with a deadly weapon implicitly found appellant had been armed with the knife. Although, as we have explained, the

jury was unable to properly determine if the knife was a deadly weapon within the meaning of Penal Code, section 3024, we cannot say the jury also improperly concluded appellant was armed with the knife..The evidence amply supports the conclusion the knife was the one used by appellant.

■ Finally, we consider the issue whether *People* v. *Daniels, supra,* 71 Cal.2d 1119, compels reversal of the kidnaping conviction. In *Daniels,* our high court held that brief movements of a victim which are merely incidental to the commission of a robbery and do not substantially increase the victim's risk of harm over and above that necessarily present in the crime itself do not constitute kidnaping to commit robbery. (Pen. Code, § 209.) The *Daniels* principle is applicable to simple kidnaping under Penal Code, section 207. (*People* v. *Williams,* 2 Cal.3d 894, 901 [88 Cal. Rptr. 208, 471 P.2d 1008]; *Cotton* v. *Superior Court,* 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].)

Ms. J. testified she was able to sit up in the car and observe the route the car was proceeding on its return to her apartment. After the police arrived at her apartment, Ms. J. retraced the route and took the police to a dead end alley directly behind appellant's place of business; appellant, was found there asleep in his automobile. Officer Macklin of the Garden Grove Police Department testified the distance from Ms. J.'s apartment to that location was between two and three-fourths and four miles.

At the outset, we are faced with the question whether despite appellant's failure to request an instruction properly defining kidnaping under *Daniels,* such an instruction should have been given by the trial court *sua sponte.* We have found no reported case since *Daniels* determining this precise issue.[2]

■ It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. (*People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Graham,* 71 Cal.2d 303, 318 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Wilson,* 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820].) The general principles of law governing the case are those principles closely and openly connected with the evidence adduced before the court which are necessary for the jury's proper consideration of the case. (*People* v. *Wilson, supra; People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].) ■ At a minimum, it is the court's duty to ensure the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for

[2]The trial here began on March 11, 1970; the effective date of *Daniels* was October 2, 1969.

a proper determination in conformity with the applicable law. (*People* v. *Sanchez*, 35 Cal.2d 522, 528 [219 P.2d 9].)

■ Under the governing principles, we conclude the court should have rendered instructions *sua sponte* properly defining kidnaping. The instructions given, in effect, relieved the jury from drawing the factual distinctions necessary for a valid determination on the issue of kidnaping.[3] Thus, the jury could not have properly determined whether the asportation of Ms. J. was merely incidental to the commission of the offenses otherwise involved, i.e., rapes, nor could they make the determination that, if connected with the rapes, the asportation substantially increased the possibility of harm to Ms. J. over and above that necessarily present in the underlying crimes.

Whether movement substantially increases possibility of additional harm to the victim is a question of fact. It should be determined by the trier of fact, not by us as a matter of law. (*People* v. *Anthony*, 7 Cal.App.3d 751, 766 [86 Cal.Rptr. 767].)

The jury might well have had some doubt as to the first prong of the *Daniels* test, whether the asportation of Ms. J. was "incidental" to the commission of the rapes, even though it found appellant not guilty of burglary. In the context of its findings, the jury apparently concluded appellant did not have the intent to commit rape at the time he entered the apartment. However, the record would support a determination either that the intent was formed immediately after entry into the apartment, or at some time later while looking for a telephone to contact Ms. J.'s grandmother. In the former case, the asportation might have been only "incidental" to the contemplated rape (*People* v. *Schafer*, 4 Cal.App.3d 554, 561 [84 Cal. Rptr. 464]); in the latter, however, the kidnaping may have been commenced before the intent to rape was formed and thus could not logically be said to be incidental to the rape. (Cf. *People* v. *Tribble*, 4 Cal.3d 826, 830-832 [94 Cal.Rptr. 613, 484 P.2d 589].)

The second prong of the *Daniels* test, seeks to determine whether the victim might suffer "significant physical injuries over and above those to which a victim of the underlying crime is normally exposed." (*People* v. *Timmons*, 4 Cal.3d 411, 414 [93 Cal.Rptr. 736, 482 P.2d 648].) As an

---

[3]The trial court instructed the jury in the terms of the superseded CALJIC instructions Nos. 651 and 652. There are, as yet, no published new CALJIC instructions adequately covering simple kidnaping under Penal Code, section 207. CALJIC instructions Nos. 9.20 and 9.21 are insufficient, in that they do not include consideration of the substantiality of the increase in the risk of harm over and above that normally inherent in the underlying crime. (*People* v. *Williams, supra,* 2 Cal.3d 894.)

appellate court, we might think Ms. J. was in greater danger of significant injury, other than that latent in the act of rape, in the isolated spot to which she was taken at knife-point than in the apartment in which her mother slept. (See *People* v. *Miller,* 12 Cal.App.3d 922 [91 Cal.Rptr. 97]; *People* v. *Lynch,* 14 Cal.App.3d 602 [92 Cal.Rptr. 411]; *People* v. *Rocco,* 21 Cal. App.3d 96, 104 [98 Cal.Rptr. 365].) We might believe her resistance after her abduction could have invited a higher degree of risk of harm—both potentially and in severity—than where a mother's additional response was possible.[4] We might also come to the conclusion the movement by automobile involved in reaching the spot where the rapes occurred also substantially increased the risk of harm. As we have noted, while he drove the automobile appellant held Ms. J. down with a knife at her neck and he had also consumed a considerable amount of alcohol; this movement, under the circumstances, could have substantially increased the risk of physical injury to Ms. J. beyond those risks to which a rape victim is normally exposed. However, a jury properly instructed might not have come to the same conclusion and could have done so rationally. The jury might well have concluded essentially the same risks would have inhered in the rapes had they occurred in the apartment. In fact, the jury could have reasonably concluded the risk of harm in the apartment was greater than in the spot to which Ms. J. was taken, because of the action appellant might have taken had Ms. J.'s mother intervened.

The trial court did not present either of the two possible theories of *Daniels* to the jury for their guidance in deciding the case. Under the instructions given to it the jury could have found appellant guilty of kidnaping whether or not it concluded the asportation was part and parcel of the rapes as well as whether or not it decided there was no increase in risk to Ms. J.

Because we cannot say with conviction, had the jury been given proper instructions, that a different verdict would have been improbable on the

---

[4]It has been held a kidnaping conviction may be sustained even though there is no substantial increase in the risk of harm as contemplated by *Daniels* and *Timmons,* where the asportation amounts to a " 'substantial distance' . . . 'into another part of the same county.' " (Pen. Code, § 207; *People* v. *Rocco, supra,* 21 Cal.App.3d 96, 105.) The conclusion seems unsound in light of our high court's insistence that "[t]he true test in each case is not mere mileage but whether the movements of the victims *substantially* increase the risk of harm' beyond that inherent in the crime . . . itself." (*People* v. *Timmons, supra,* 4 Cal.3d 411, 415; *People* v. *Daniels, supra,* 71 Cal.2d 1119, 1139.)

kidnaping charge, the judgment is reversed as to count VI (kidnaping) and affirmed as to counts II and III (rape).

Tamura, J., and Kaufman, J., concurred.