Filed 9/21/20  P. v. McRorie CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT VERN MCRORIE,<br><br>Defendant and Appellant. | C089955<br><br>(Super. Ct. No. 18CR000534) |

Defendant Robert Vern McRorie, who represented himself during trial, was convicted of crimes related to eluding and resisting a peace officer.  On appeal, he contends the trial court erred in denying his motions for advisory counsel.  He also argues he was denied reasonable access to a law library.  He further requests we strike his prior prison term enhancements.  Finally, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant argues the trial court erred in imposing certain fines and fees without holding a hearing to determine his ability to pay them.  We will strike the prior prison term enhancements, remand the matter for resentencing, and otherwise affirm the judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Just after midnight on March 11, 2018, a sergeant with the Tehama County Sheriff's Office saw defendant speeding by in a car. Using his radar, the officer determined defendant was driving 70 miles per hour in a 55-mile-per-hour zone. The officer activated his lights and pursued defendant. Defendant refused to pull over and continued driving for over 11 miles. Even though other cars were also on the road, defendant drove erratically, including crossing double yellow lines and traveling in the oncoming lane of traffic, failing at least once to stop at a stop sign, and reaching speeds in excess of 100 miles per hour in a 55-mile-per-hour zone. Eventually, defendant pulled into a parking lot, got out of his car, and ran away toward a nearby creek. After determining there was no one else in defendant's car, the officer chased defendant on foot. The officer finally caught up with defendant at the creek, and defendant dove into the water and swam to the other side. A second officer arrived and the two officers searched for defendant. The two officers eventually found defendant with the help of a police helicopter; defendant was taken into custody.

Defendant was charged with attempting to elude a peace officer with willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a)) and willfully resisting, delaying, and obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)).[1] With respect to the eluding an officer count, it was further alleged defendant committed the crime while released from custody on bail or on his own recognizance (§ 12022.1). It also was alleged defendant suffered eight prior prison terms (§ 667.5, subd. (b)).

In April 2018, a doubt was declared as to defendant's competency to stand trial. (§ 1368 et seq.) Proceedings were stayed and a psychologist was appointed to evaluate

---

[1] Undesignated statutory references are to the Penal Code.

2

defendant. The trial court found defendant incompetent to stand trial in May 2018. In February 2019, the court found defendant was restored to competency and resumed proceedings.

In March 2019, defendant filed a motion requesting to represent himself. The motion included a signed *Faretta*[2] waiver form with advisements. Included in the petition was a statement from defendant that he understood that, "if I am permitted to represent myself, . . . I will have to conduct my own defense without the aid of counsel, unless the court grants a motion by me for advisory counsel." Defendant stated that he had represented himself and successfully obtained dismissals in three prior criminal proceedings. Defendant also filed a motion for "[a]ncillary defense services," including advisory counsel and access to a law library.

During the hearing on defendant's requests, the trial court noted that defendant had previously been represented by six different attorneys, each of whom had declared a conflict. The court denied prior requests for self-representation because it was concerned defendant did not have an adequate legal education. But, after six attorneys declared a conflict, the court felt it had "no choice but to allow" defendant to represent himself. Defendant confirmed for the court that he had read and understood the *Faretta* waiver. The court advised defendant of his rights and also explained the dangers and disadvantages associated with representing himself. Defendant confirmed he understood.

With respect to defendant's request for advisory counsel, the court responded, "So, let me tell you right now there is no such thing as advisory counsel. There is no such thing." After further discussion, the court denied defendant's request for advisory counsel. In a subsequent written ruling, the court formally denied defendant's request for

---

[2]    *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562].

3

advisory counsel, citing *People v. Goodwillie* (2007) 147 Cal.App.4th 695. The court also noted, "There is no constitutional right to advisory counsel."

During the two-day trial in May 2019, the only testimony was from the two officers at the scene. Defendant cross-examined each witness. After deliberating for less than one hour, a jury found defendant guilty of eluding and resisting a peace officer. In bifurcated proceedings, the court found true that defendant had eight prior prison terms.

In June 2019, the trial court sentenced defendant to state prison for an aggregate term of nine years, as follows: three years (the upper term) for attempting to elude a peace officer, one year concurrent for resisting a peace officer, and six consecutive years for each of six prior prison term enhancements.[3] The court also imposed a $600 restitution fine (§ 1202.4, subd. (b), a corresponding $600 parole revocation restitution fine, suspended unless parole is revoked (§ 1202.45). In addition, the court imposed an $80 court operations assessment (§ 1465.8) and a $60 court facilities assessment (Gov. Code, § 70373). Defendant did not object to the fines and fees, nor did he claim he was unable to pay them.

DISCUSSION

I

A defendant who elects to represent himself has no constitutional right to advisory counsel or any other form of hybrid representation. (*People v. Clark* (1992) 3 Cal.4th 41, 111, abrogated on other grounds in *People v. Pearson* (2013) 56 Cal.4th 393, 462; *People v. Moore* (2011) 51 Cal.4th 1104, 1119-1120, fn. 7.) The appointment of advisory counsel rests in the sound discretion of the trial court and will not be set aside absent a showing the ruling is arbitrary, capricious, or whimsical. (*People v. Crandell* (1988) 46

---

[3] At the prosecution's request, the court vacated one of the prior prison term findings, bringing the total number to seven. Also at the prosecutor's request, the court did not impose sentence on one of the remaining prior prison terms.

4

Cal.3d 833, 863, abrogated on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365; see also *People v. Garcia* (2000) 78 Cal.App.4th 1422, 1431 [reasoning that "if [a defendant] is not able to defend himself without the assistance of advisory counsel, then he is not competent to represent himself"].) "In ruling on such a request, the trial court may consider [a] defendant's demonstrated legal abilities and reasons for seeking the appointment of advisory counsel, including evidence of any manipulative purpose. [Citation.] Other factors include the seriousness of the charges, the complexity of the issues, and defendant's education and familiarity with the justice system. [Citations.]" (*People v. Debouver* (2016) 1 Cal.App.5th 972, 976.)

When a trial court fails to exercise its discretion because it erroneously believes it lacks authority to appoint advisory counsel, a reviewing court will analyze the error as if the trial court had exercised its discretion. (*People v. Bigelow* (1984) 37 Cal.3d 731, 743-744.) Reversal is required if it would have been an abuse of discretion to refuse to appoint advisory counsel (*id.* at p. 744); if it would not have been an abuse of discretion, the error is reviewed under the *Watson* harmless error standard. (*People v. Crandell, supra*, 46 Cal.3d at pp. 864-865; *People v. Watson* (1956) 46 Cal.2d 818, 836 [reversal is required only if it is reasonably probable a result more favorable to defendant would have been achieved had the error not occurred].)

According to defendant, the trial court failed to exercise its discretion to appoint advisory counsel because it purportedly believed it had no such discretion. Defendant points to the trial court's remark during the hearing that there is "no such thing" as advisory counsel. He also argues the trial court made clear in its written ruling that it was denying his request because a defendant has no constitutional right to advisory counsel. The People disagree, arguing that the court indicated in its written decision that it fully understood its discretion because it relied on *Goodwillie*, which correctly states that a trial court has authority to appoint advisory counsel. (*People v. Goodwillie, supra*, 147 Cal.App.4th 709-710 ["The weight of both federal and California precedent . . .

5

establishes that a criminal defendant does not have a constitutional right to the assistance of advisory counsel, but that it is within the discretion of trial courts to appoint advisory counsel to assist a criminal defendant who is proceeding in propria persona].)

Regardless, defendant's contentions are without merit because it would not have been an abuse of discretion for the court to refuse defendant's request. Although defendant was initially found incompetent to stand trial, he was returned to competency by the time the trial court granted his request to represent himself. In addition, the record indicates he aggressively defended himself. Defendant, who had extensive experience with the criminal justice system and boasted that he had obtained dismissals while representing himself in three prior criminal cases, filed multiple motions in the trial court. Defendant also cross-examined each of the two trial witnesses. Moreover, defendant never explained to the trial court why he needed advisory counsel. The case against defendant was not complex and only involved charges of eluding a peace officer with willful and wanton disregard and resisting a peace officer, along with suffering prior prison terms. On appeal, defendant fails to set forth any witnesses or evidence that would have made a difference in his case. Under the circumstances, it is not reasonably likely defendant would have obtained a more favorable result if advisory counsel had been appointed for him. As such, even if the trial court had erred by misunderstanding the scope of its discretion, any error would be harmless.

II

Defendant argues his constitutional rights were violated because he was denied reasonable access to a law library. According to defendant, the jail should have provided him with general access to a law library or legal research assistance, rather than limiting him to requesting legal materials. Defendant contends he was prejudiced by the lack of access because he was unable to "understand the significance of the element of 'willful and wanton disregard of the safety of others' in the felony charged against him and focus his legal arguments to the jury in negating that requirement."

6

A.      *Additional background*

In his March 2019 request for ancillary services, defendant requested access to a law library, runner, law clerk, photocopies at no charge, legal mail at no charge, an investigator, and "anything else defendant needs as means to developing a defense." During the hearing, the court asked the jail sergeant about the jail's policies and whether the jail had a law library. The sergeant informed the court that the jail could get legal research materials to defendant through request, and would help defendant to send motions and other documents via legal mail. The court ordered the jail to accommodate defendant with free photocopies and noncollect and confidential calls. It further requested the jail to "accommodate [defendant] as much as possible knowing that he is representing himself," and the sergeant agreed. With respect to defendant's request for a law clerk, the court informed defendant that there were none. The court advised defendant, "[Y]ou're just going to have to, unfortunately, operate within the confines of being in jail."

In April 2019, defendant moved to require the jail to provide legal research material and other services needed to prepare his defense. Defendant argued the jail had only allowed him to submit three requests per month for legal research. He also noted it typically took three days to obtain a response to his request for legal research. Defendant estimated he would need to file a 70- to 80-page motion, with 20 witnesses and several expert witnesses.

In support of his motion, defendant included an inmate grievance he had submitted to the jail about his limited access to legal research. The jail responded that it only allowed inmates representing themselves to make three legal requests with five items per request every 30 days. Inmates not representing themselves were allowed to make one request every 30 days. At the second appeal level for his grievance, the jail responded, "You have been denied nothing. The court[ ] only ruled you may have access to the law library and did not order us to give you free access to as many requests as you desire.

7

Your other grievance for this same issue was reviewed by me earlier this week and sent back to be returned to you."

The court held a confidential ex parte hearing in May 2019. Defendant explained he was locked in a cell 22 hours a day and was not able to get forms for subpoenas, had no access to an investigator or law clerk, and was being restricted in making requests for legal research. The court denied defendant's motion, reasoning that "the Court made very clear to you, when you chose to represent yourself that these were the limitations that you were going to be operating under and, quite frankly, based on the motions that you filed, which have a tremendous amount of legal authority, which I have to tell you is impressive, I think that your access to legal research material is appropriate."

B.      *Analysis*

A defendant's constitutional right to counsel " 'includes, and indeed presumes, the right to effective counsel [citations], and thus also includes the right to reasonably necessary defense services.' " (*People v. Blair* (2005) 36 Cal.4th 686, 732 (*Blair*), overruled on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919.) This does not mean, however, that inmates have an "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." (*Lewis v. Casey* (1996) 518 U.S. 343, 351 [135 L.Ed.2d 606, 618].)

"[T]he crucial question . . . is whether [the defendant] had reasonable access to the ancillary services that were reasonably necessary for his defense." (*Blair, supra*, 36 Cal.4th at p. 734.) Generally, only the *complete* denial of *any means* of presenting a defense infringes on a defendant's right under *Faretta* to represent himself or his right to access the court. (See, e.g., *Milton v. Morris* (9th Cir. 1985) 767 F.2d 1443, 1445-1447; *United States v. Wilson* (9th Cir. 1982) 690 F.2d 1267, 1273; *Blair*, at p. 733 [a defendant's right of self-representation is violated when a defendant is deprived of " 'all means of presenting a defense' "].)

The record establishes that under the circumstances, defendant had reasonable access to legal research materials to present his defense. Every 30 days, defendant was allowed to submit three requests with five items each, for a total of 15 items per month. Moreover, notwithstanding defendant's standing complaint about his lack of access to legal materials and his need for research assistance, he filed multiple pretrial motions, which the trial court described as having a "tremendous" and "impressive" amount of legal authority. Defendant also actively participated in the trial, including cross-examining witnesses. On this record, we cannot say defendant was denied reasonable access to legal materials or that, assuming he was denied reasonable access, defendant was in any way prejudiced.

## III

In October 2019, the Governor signed Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1). Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to only those who have served a prior prison sentence for a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).) The amendment applies "retroactively to all defendants whose judgments are not yet final as of that date." (*People v. Petri* (2020) 45 Cal.App.5th 82, 94.)

As the People concede, defendant is entitled to have all of the one-year prior prison term enhancements stricken, including the prior that was found true but remains unsentenced. Defendant's case was not yet final on the effective date of the amendment to prior section 667.5, subdivision (b). In addition, his prior prison term enhancements were not based on sexually violent offenses.

Because the trial court imposed less than the maximum sentence, we will remand the matter for resentencing to allow the court to exercise its sentencing discretion in light of the changed circumstances. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

IV

Relying on *Dueñas*, defendant argues due process requires that we strike the fines and fees imposed or remand the matter for a hearing on his ability to pay them. Defendant concedes that he did not object to the imposition of the fines and fees, even though defendant was sentenced five months after *Dueñas* was decided. We decline defendant's invitation to excuse his failure to object and instead conclude he has forfeited the issue on appeal.[4]

DISPOSITION

The trial court is directed to strike defendants' prior prison term enhancements. In all other respects, the judgment is affirmed. The matter is remanded for resentencing not inconsistent with this opinion. Upon resentencing, the trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

                                      KRAUSE         , J.


We concur:


     HULL         , Acting P. J.



     DUARTE       , J.

---

[4] Even if defendant had preserved the issue for appeal, his arguments would be meritless because we would join the courts that have concluded that *Dueñas* was wrongly decided. (See, e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted, Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923-929.)