Filed 3/12/13  P. v. Ramirez CA5
Opinion following rehearing

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESUS RAMIREZ et al.,<br><br>    Defendants and Appellants. | F062512<br><br>(Super. Ct. Nos. BF131871A & BF131871C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Madeline McDowell, under appointment by the Court of Appeal, for Defendant and Appellant Jesus Ramirez

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant Zane Molina Hubbard.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellants Jesus Ramirez and Zane Molina Hubbard of multiple offenses. In this appeal they both contend the evidence was insufficient to sustain their convictions for making criminal threats pursuant to Penal Code section 422[1] and to support the findings that the crimes were committed for the benefit of a criminal street gang. They further maintain the trial court erred when it failed to instruct sua sponte on attempted criminal threats and violated section 654 in sentencing. Ramirez contends the evidence was insufficient to sustain his count 5 conviction for solicitation to commit robbery and his count 6 conviction for violating section 186.22, subdivision (a), the gang offense. Lastly, Hubbard contends the photo lineup used to identify him was flawed and requires reversal of all his convictions.

We reject their contentions, with the exception of Ramirez's contentions on counts 5 and 6, and certain claims of error regarding imposition of terms of imprisonment on the enhancements. We therefore affirm the remaining convictions and remand for resentencing.

### FACTUAL AND PROCEDURAL SUMMARY

Ramirez was charged in an incident involving Anna Deluna; Ramirez and Hubbard were charged jointly with offenses arising from an altercation with Alex Vargas.

*Deluna Incident*

The Deluna incident formed the basis of counts 1 through 6 and 13. On April 5, 2010, Deluna met up with Ramirez to sell him some marijuana.

When Deluna arrived where Ramirez was waiting, he jumped into the backseat of her car, claiming he needed to look at the marijuana. Ramirez then told Deluna he was going to rob her and pulled out two guns. Ramirez took the keys to Deluna's car,

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

2.

searched her, and then searched the car. Ramirez took Deluna's phone and her money, an amount between $200 and $400.

Ramirez tried to get Deluna to drive him to other drug dealers so he could rob them and offered to give Deluna one-half of whatever he obtained from the robberies. Deluna did not respond. They drove around for about 30 minutes, eventually returning to where they had started.

Ramirez instructed Deluna to get out of the car, after which he exited the car and went around to where she stood. Ramirez hugged and kissed her and then told her he had her driver's license and address and would kill her if she told the police. Ramirez then drove off in Deluna's car. Deluna contacted her grandmother, who called the police.

Deluna identified Ramirez from a photo lineup and in court as the person who had robbed her. She was certain of the identification of Ramirez as the perpetrator.

***Vargas Incident***

The Vargas incident formed the basis of the charges set forth in counts 7 through 12 against both Ramirez and Hubbard.

On April 22, 2010, Vargas was driving his red Mustang on Texas Street when he approached Christina Silvas and asked if he could buy some marijuana from her. Silvas told Vargas to come back in an hour. Silvas then told her boyfriend, Ramirez, that a man in a red Mustang was following her.

Vargas returned in one hour as instructed. Ramirez came out of a house and approached Vargas, asking him for a ride so he could deliver some keys to a truck. Vargas thought Ramirez was Silvas's brother and agreed to give Ramirez a ride. During the ride, they picked up Hubbard and returned to where they had started. Ramirez was in the front seat with Vargas; Hubbard was in the backseat. At this point, both Ramirez and Hubbard pulled out guns and took Vargas's hat, jacket, identification, CD's, and other items. Ramirez pointed the gun at Vargas and said, "Don't move," or he would shoot.

3.

Ramirez and Hubbard ordered Vargas to get into the trunk of the Mustang. Vargas resisted, but Ramirez stated he would shoot Vargas unless Vargas complied. Vargas got into the trunk and the car sped away. Vargas remained in the trunk for about 30 minutes, during which time he was worried he would be shot when the car stopped. Vargas was taken out of the trunk of the car and left on a rural dirt road. He walked about 30 minutes to a farmhouse and used the phone there to call police.

Vargas identified Ramirez and Hubbard from photo lineups and also at trial. He was certain that Ramirez and Hubbard were the two men who had robbed and kidnapped him.

On April 23, 2010, officers searched Silvas's residence and found identification and items belonging to Vargas.

On April 25 Ramirez was spotted by police. He fled and was chased into a residence on South Owens Street. Ramirez hid in the attic and was extracted by force. After he was subdued, Silvas arrived on the scene and was yelling hysterically that Ramirez was her boyfriend.

Silvas told police that two of her friends, whom she called Spooky and Menace, had come to her house after the robbery and had given her Vargas's items that were found in her residence; Menace also showed her money taken from Vargas's wallet. Silvas said Menace was her boyfriend and identified Ramirez as Menace. Silvas also identified Hubbard from a photo and stated Hubbard was Spooky.

*Trial*

Ramirez was charged with kidnapping to commit robbery (count 1), kidnapping to commit carjacking (count 2), criminal threats (count 3), dissuading a witness from testifying (count 4), solicitation to commit robbery (count 5), being an active participant in a criminal street gang (count 6), and being a felon in possession of a firearm (count 13). Ramirez and Hubbard were charged with kidnapping to commit robbery (count 7), carjacking for the purpose of kidnapping (count 8), assault with a semiautomatic firearm

4.

(count 9), criminal threats (count 10), active participation in a criminal street gang (count 11), and being a felon in possession of a firearm (count 12).

It also was alleged that the offenses set forth in counts 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, and 13 were committed for the benefit of a criminal street gang. In addition, firearm enhancements were alleged as to counts 1, 2, 3, 4, 6, 7, 8, 9, 10, and 11. As to 12 counts against Ramirez and all six counts against Hubbard, it was alleged that both had served two prison terms.

At trial Officer Eric Littlefield testified as a gang expert. Littlefield testified that Varrio Bakers is an active gang in Bakersfield with several hundred members. Its primary activities include weapons violations, assaults with a deadly weapon, witness intimidation, robbery, car thefts, carjacking, murders, and narcotics sales. The Varrio Bakers gang claims the area between Brundage Lane to the south, Dr. Martin Luther King Boulevard or Washington Street to the east, H Street or Eye Street to the west, and East Truxtun to the north as their turf.

Littlefield opined that both Ramirez and Hubbard were active members of the Varrio Bakers gang. He based this opinion on their gang tattoos, their history of offenses, and their prior contacts with police where both claimed membership in the Varrio Bakers gang.

In response to a hypothetical based upon the offenses committed against Deluna, Littlefield opined that the offenses would benefit the gang because they involved use of a firearm, victimization of others, and theft of the victim's vehicle, which could be used in the commission of other crimes. In response to a second hypothetical based upon the offenses committed against Vargas, Littlefield opined that these offenses would benefit the gang for the same reasons as the first hypothetical, plus the offenses were committed by gang members acting in concert. The parties stipulated that Varrio Bakers was a criminal street gang.

The jury convicted Ramirez and Hubbard of all charges, and all enhancements were found true except for the firearm allegation appended to count 4. In a court trial, the prior prison enhancements were found true.

*The Sentences*

The trial court sentenced Ramirez to an indeterminate term of 37 years to life, plus 16 years, and a determinate term of 24 years. It sentenced Hubbard to an indeterminate term of 15 years to life and a determinate term of 24 years 4 months.

## DISCUSSION

Both Ramirez and Hubbard contend the evidence was insufficient to sustain their convictions for making criminal threats pursuant to section 422 and to support the findings that the crimes were committed for the benefit of a criminal street gang. They further maintain the trial court erred when it failed to sua sponte instruct on attempted criminal threats and violated section 654 in sentencing. Ramirez separately contends the evidence was insufficient to sustain the count 5 conviction for solicitation to commit robbery and the count 6 conviction for violating section 186.22, subdivision (a). Lastly, Hubbard separately contends the photo lineup used to identify him was flawed and requires reversal of all his convictions.

## I. Hubbard Identification

Hubbard contends the photo lineup used to identify him was unduly suggestive and unreliable, thus his convictions must be reversed. We disagree that his convictions must be reversed.

The trial court held an Evidence Code section 402 hearing to decide whether Vargas's identification of Hubbard as one of the perpetrators would be admissible. The trial court found that the photographic lineup was suggestive because only one picture, Hubbard's, showed a person with tattoos on his face; the other five photos depicted people without facial tattoos. The trial court also found, however, that the photo lineup did not taint Vargas's in-court identification of Hubbard.

6.

In ruling that the photo lineup had not tainted Vargas's in-court identification of Hubbard, the trial court noted that Vargas had given a detailed description of Hubbard to the police immediately after the incident and had had an opportunity to view Hubbard during the incident, when it was daylight. The physical characteristics described by Vargas prior to being shown the photo lineup were consistent with Hubbard's physical characteristics. At the Evidence Code section 402 hearing, with Hubbard not present, Vargas accurately described Hubbard from his recollection of the incident. He was subject to cross-examination as to his recollection and description. He accurately described physical characteristics of Hubbard, even when a question suggested an erroneous answer, and accurately described physical attributes of both Ramirez and Hubbard. He later identified both Hubbard and Ramirez in court.

In determining the admissibility of evidence, the trial court has broad discretion. Under Evidence Code section 402, a trial court's ruling on admissibility implies whatever finding of fact is prerequisite thereto. A separate or formal finding is unnecessary unless otherwise required by statute. On appeal, a trial court's decision to admit or not admit evidence following a hearing under Evidence Code section 402 is reviewed for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197.)

In reviewing Hubbard's contention that the photo lineup tainted any identification of him as a perpetrator, we accept the trial court's resolution of disputed facts and inferences, as well as its evaluation of the credibility of witnesses. (*People v. Whitson* (1998) 17 Cal.4th 229, 248.) We "'"'give great weight to the considered conclusions' of a lower court that has previously reviewed the same evidence." [Citations.]'" (*Ibid.*)

This court, however, independently reviews a trial court's ruling that an identification procedure was not unduly suggestive or tainted a later identification. (*People v. Avila* (2009) 46 Cal.4th 680, 698-699.) In considering whether the totality of the circumstances suggests a misidentification because an eyewitness has been subjected to undue suggestion, a court looks to numerous factors, such as (1) the opportunity of the

witness to view the suspect at the time of the offense; (2) the accuracy of the witness's prior description of the suspect; (3) the level of certainty demonstrated at the time of identification; (4) the witness's degree of attention at the time of the incident; and (5) the lapse of time between identification and the incident. (*People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*).)

The evidence established that Vargas accurately described Hubbard physically shortly after the incident and before being presented with a photo lineup; Vargas had the opportunity to observe Hubbard somewhat closely during the incident; and Vargas accurately described Hubbard's physical characteristics when cross-examined at the Evidence Code section 402 hearing, even answering accurately when a question suggested an incorrect response. Vargas described Hubbard's distinctive facial tattoos in his initial statements to police. Vargas also was very certain of his identification of Hubbard. These facts and the totality of the circumstances do not suggest an in-court misidentification by Vargas. (*People v. Arias* (1996) 13 Cal.4th 92, 168.)

Once it is established that an identification procedure used was unnecessarily suggestive, exclusion of identification testimony is required only if the suggestive identification procedures tainted the in-court identification. (*People v. Yeoman* (2003) 31 Cal.4th 93, 123.) Hubbard has failed to meet his burden of establishing that the photo lineup tainted Vargas's in-court identification, even though the trial court concluded the photo lineup was suggestive. (*Cunningham, supra,* 25 Cal.4th at pp. 989-990.)

In light of these principles and the totality of the circumstances, we conclude the trial court did not err in concluding the photo lineup did not taint the in-court identification of Hubbard.

## II.     Sufficiency of the Evidence

Multiple contentions regarding the sufficiency of the evidence are raised by Ramirez and Hubbard. Ramirez contends the evidence was insufficient to sustain the count 6 conviction for violating section 186.22, subdivision (a) and the count 5 offense

for solicitation to commit robbery. Ramirez and Hubbard both contend the evidence was insufficient to sustain the count 10 convictions for criminal threats and to support the section 186.22 enhancements appended to counts 7, 8, 9, and 10.

We agree with Ramirez on the sufficiency of the evidence to support counts 5 and 6. We, however, reject the other claims.

### *Standard of Review*

When assessing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment below to determine whether it contains substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The same standard applies when assessing a federal constitutional due process claim: "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318, fn. omitted (*Jackson*).) "The standard is the same, regardless of whether the prosecution relies mainly on direct or circumstantial evidence. [Citation.]" (*People v. Vazquez* (2009) 178 Cal.App.4th 347, 352 (*Vazquez*).)

"'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.' [ Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245; see also *Jackson, supra*, 443 U.S. at p. 319.) Generally, the testimony of a single witness is sufficient to prove a disputed fact unless the testimony is inherently improbable or physically impossible. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Scott* (1978) 21 Cal.3d 284, 296.)

The trier of fact makes credibility determinations and resolves factual disputes. (*People v. Estrella* (1995) 31 Cal.App.4th 716, 724-725 (*Estrella*).) We will not

substitute our evaluation of a witness's credibility for that of the fact finder. (*Vazquez, supra*, 178 Cal.App.4th at p. 352.) In conducting a review for sufficiency of the evidence, we presume in support of the judgment the existence of every fact the trier of fact reasonably could deduce from the evidence. (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

### Gang Offense

Ramirez contends his count 6 conviction for violating section 186.22, subdivision (a) must be reversed because there was no evidence he acted in conjunction with another gang member in committing the offense, as required by the holding of *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132. The People concede the issue. We agree and will reverse the count 6 conviction based upon the holding in *Rodriguez*.

### Solicitation to Commit Robbery

Ramirez contends, and the People concede, the evidence was insufficient to sustain the count 5 conviction for solicitation to commit robbery. We agree.

Section 653f, subdivision (a) provides in relevant part: "Every person who, with the intent that the crime be committed, solicits another to … commit or join in the commission of … robbery … shall be punished by imprisonment …." Solicitation of robbery must be proven "by the testimony of two witnesses, or of one witness and corroborating circumstances." (*Id.,* subd. (f).) The provision set forth in subdivision (f) was enacted "to guard against convictions for solicitation based on the testimony of one person who may have suspect motives." (*People v. Phillips* (1985) 41 Cal.3d 29, 76.)

Here, Deluna testified that Ramirez solicited her to commit robbery of other drug dealers. No other witness testified to the solicitation. There also was no corroborating evidence from any other source, as the People concede.

Corroborative evidence is additional evidence of a different character related to the same point. Corroborative evidence need not be strong and need not be sufficient in itself, without the aid of other evidence, to establish the fact in question. (*People v.*

10.

*Baskins* (1946) 72 Cal.App.2d 728, 731.) Although section 653f requires corroboration, the statute does not specify what type of evidence is necessary. Courts have construed this statute to mean that the "corroborating evidence must tend to connect the defendant with the offense. [Citations.]" (*People v. MacEwing* (1955) 45 Cal.2d 218, 224.)

Although we have no reason to doubt the truthfulness of Deluna's testimony on this point, the plain language of the statute requires a second witness or corroborating evidence, neither of which was present in this case. Consequently, we must reverse the count 5 conviction for solicitation to commit robbery.

### *Criminal Threats*

Ramirez and Hubbard contend the evidence was insufficient to sustain the count 10 conviction for criminal threats because there was no evidence Vargas was in sustained fear. We disagree.

To convict a defendant of violating section 422, the prosecution must prove all of the following elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)

A sustained fear under the statute need only occur over "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33

11.

Cal.App.4th 1149, 1156 (*Allen*).)  Moreover, in determining if a criminal threat has been made, the jury is entitled to consider "all of the circumstances" and "the threatening statement does not have to be the sole cause of the victim's fear."  (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014 (*Solis*).)

Here, ample evidence was presented from which a reasonable jury could have inferred that Vargas was in sustained fear.  Both Ramirez and Hubbard had guns.  Vargas was told at one point not to move or he would be shot.  Ramirez later told Vargas to get into the trunk of the car; Vargas initially resisted, but complied after Ramirez stated Vargas would be shot unless he did as he was told.  Vargas testified that during the 30 minutes he spent in the trunk of the car, "I was worried that I was going to get shot."

Vargas testified he was worried he would be shot, even after he complied with the directives of Ramirez and Hubbard.  Any reasonable person would be in sustained fear of his or her safety when threatened by two men with guns.  (*Toledo, supra,* 26 Cal.4th at pp. 227-228.)  Vargas's testimony also established that he sustained this thought for at least 30 minutes while in the trunk of the car.  This constitutes more than a momentary or fleeting amount of time.  (*Allen, supra,* 33 Cal.App.4th at p. 1156.)

It is of no consequence that Vargas did not use the term "sustained fear" to convey his thoughts and feelings during his testimony.  The statute does not require specific words be used by a victim in order to convey the sense of sustained fear and Ramirez and Hubbard have cited no case so stating.

In *People v. Fierro* (2010) 180 Cal.App.4th 1342, a challenge to the sufficiency of the evidence supporting a criminal threat conviction was rejected where the defendant stood by the victim's car, displayed what appeared to be a gun, and threatened to kill the victim "'right now.'"  (*Id*. at p. 1346.)  The victim was "'scared to death during the whole ordeal.'"  (*Ibid*.)  In finding that the sustained fear element was proven, the appellate court reasoned the victim testified clearly that he was facing a gun, was scared for his

12.

safety, and that this mental state was not fleeting.  This was sufficient to prove the element of sustained fear.  (*Id.* at p. 1348.)

We also reject the related contentions of Ramirez and Hubbard that the trial court erred in not instructing sua sponte on attempted criminal threats because the evidence established all the elements of a section 422 offense.  The trial court is not required to instruct on offenses for which there is no evidentiary support.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)

Assuming for purposes of argument the instruction should have been given, any failure to do so does not warrant reversal.  In a noncapital case, the trial court's failure to instruct sua sponte on all lesser included offenses that are supported by the evidence must be evaluated for prejudice solely under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Breverman, supra*, 19 Cal.4th at p. 178.)  Under that standard, "A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred (*Watson,* [at p.] 836)."  (*Ibid.*, fn. omitted.)  In light of the evidence supporting the offense of criminal threats, it is not reasonably probable a result more favorable to Ramirez and Hubbard would have been obtained if an instruction on the attempted offense had been given.

### Gang Enhancements

Ramirez and Hubbard argue that the section 186.22 gang enhancements appended to counts 7, 8, 9, and 10 should be reversed because the evidence was insufficient to establish the crimes were committed for the benefit of a criminal street gang.  First, Ramirez and Hubbard claim the testimony of Littlefield, alone, was insufficient to support the gang enhancements.  Second, they assert the testimony of Ramirez's girlfriend established the crimes were personal, not gang related.  We disagree.

13.

The mental element of the gang enhancement requires substantial evidence from which the jury can infer that in committing the gang-related criminal act, the defendant specifically intended to engage in or promote criminal gang conduct. (*People v. Albillar* (2010) 51 Cal.4th 47, 68.) Ramirez and Hubbard first contend that the gang expert's opinion that the crimes were committed for the benefit of the gang by itself was insufficient to satisfy this requirement. In *Albillar*, however, the California Supreme Court specifically stated, "Expert opinion that particular criminal conduct benefited a gang … can be sufficient to raise the inference that the conduct was 'committed for the benefit of … a[] criminal street gang' within the meaning of section 186.22." (*Id.* at p. 63; see also *People v. Hernandez* (2004) 33 Cal.4th 1040, 1047-1048.)

Moreover, it is not just the gang expert's opinion that provides evidence that supports the gang enhancements. Both Ramirez and Hubbard repeatedly had claimed membership in the Varrio Bakers gang and had gang tattoos. That two gang members came together to assist each other in the commission of the crimes suggests they were committed for the benefit of the gang. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 412-413.) The Varrio Bakers gang "claimed" the area where the offenses occurred and robbery and carjacking were two of the primary offenses committed by members of the gang. These factors also support the inference they were committed for the benefit of the gang. (*Id.* at pp. 412-413; *People v. Gardeley* (1996) 14 Cal.4th 605, 619.)

None of the cases cited by Ramirez and Hubbard in support of their claim that expert testimony cannot form the basis of a finding on a gang enhancement was decided after *Albillar*. Further, in all of the cases cited by Ramirez and Hubbard, the crimes lacked at least one of the elements relied upon to establish a gang connection, be it commission with a fellow gang member, commission of offenses in the gang's turf, or commission of offenses commonly committed by the gang.

In *People v. Ochoa* (2009) 179 Cal.App.4th 650, 662 and *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199, there was no evidence the defendant committed the crimes in concert with other gang members or gang territory.

In *People v. Ramon* (2009) 175 Cal.App.4th 843, 853, there was no evidence the crimes committed were one of the primary activities of the gang.

Unlike *People v. Killebrew* (2002) 103 Cal.App.4th 644, 652, where the gang expert impermissibly testified to the defendant's subjective knowledge and intent, here the gang expert explained in a hypothetical how the crimes would benefit the gang and further its activities. *Killebrew* does not preclude the prosecution from eliciting testimony from an expert that allows a jury to infer the motive for a crime or a defendant's intent. (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551.)

Additionally, the defense suggested the crimes against Vargas were motivated by Ramirez's reaction to Vargas following Silvas home and "stalking females" in the area rather than any gang motivation. This argument was based on the testimony of Silvas, Ramirez's girlfriend, who testified that she told Ramirez a man in a red Mustang, Vargas, was following her. Although this was some slight evidence from which the jury could have concluded the crimes against Vargas were personal and not gang related, it is the province of the jury to assess the credibility of witnesses. The trier of fact makes credibility determinations and resolves factual disputes. (*Estrella, supra,* 31 Cal.App.4th at pp. 724-725.) We will not substitute our opinion of a witness's credibility for that of the fact finder. We can reject testimony that the jury finds credible only if it is inherently improbable or impossible, which is not the case here. (*People v. Sanchez* (1995) 12 Cal.4th 1, 31.)

Here, there is no basis upon which to reject the jury's findings because sufficient evidence supports those findings.

## III. Sentencing Issues

Ramirez and Hubbard raise two primary sentencing issues, and Hubbard challenges his custody credits.

First, Ramirez and Hubbard contend the trial court erred by imposing consecutive sentences for the count 9 and 10 convictions because these offenses were an indivisible course of conduct with the count 7 offense and imposition of punishment should have been stayed pursuant to section 654.

Second, they claim the trial court erred in imposing both the firearm and the gang enhancements on counts 9 and 10 because imposition of both enhancements is precluded by section 1170.1, subdivision (f), a claim the People concede is correct.

Finally, Hubbard asserts he is entitled to an additional six days of custody credit, and the People agree.

### Consecutive Sentences

Ramirez and Hubbard argue contend the trial court should have stayed imposition of punishment on counts 9 and 10 pursuant to section 654. They contend counts 9 and 10 arose from an indivisible course of conduct with the same criminal intent as the count 7 offense and that the assault and criminal threats simply were a means to accomplish the kidnapping. We disagree.

The count 7 offense was kidnapping to commit robbery, the count 9 offense was assault with a semiautomatic firearm, and the count 10 offense was criminal threats. All the offenses pertained to the course of conduct with Vargas.

Section 654 has been interpreted to prohibit multiple punishments for a single act, as well as an indivisible course of conduct. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.) "Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offense but not for more than one." (*Ibid.*)

16.

On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective, even though the violations shared common acts or were part of an otherwise indivisible course of conduct. (*People v. Centers* (1999) 73 Cal.App.4th 84, 98; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

Whether a course of conduct is indivisible depends on a defendant's intent and objective, not temporal proximity of offenses. (*People v. Hicks* (1993) 6 Cal.4th 784, 788-789; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial. [Citation.] The factual finding that there was more than one objective must be supported by substantial evidence. [Citation.]" (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

An offense is classed as a "general intent" crime when the required mental state entails only an intent to do the act that the law deems unlawful; an offense is classed as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm. (*People v. Davis* (1995) 10 Cal.4th 463, 517-519.) Motive is irrelevant to a general intent crime. (*People v. Kelly* (1990) 51 Cal.3d 931, 959.)

Here, the evidence supports the trial court's implicit finding that Ramirez and Hubbard harbored multiple criminal objectives.

Vargas testified that after he drove Ramirez to meet Hubbard, Hubbard climbed in the backseat and then Ramirez and Hubbard pulled out their guns and pointed them at Vargas. Vargas was told not to move or he would be shot. At that point, the assault was complete. Assault is a general intent crime and requires only the intent to willfully commit an act, the direct, natural, and probable consequences of which, if completed successfully, would probably result in physical force being applied to another. (*People v. Williams* (2001) 26 Cal.4th 779, 787-788.)

17.

Next, Hubbard and Ramirez ordered Vargas to step out of his car and climb into the trunk. While Vargas was preparing to climb into the trunk, Ramirez and Hubbard robbed him of personal property and then, with Vargas in the trunk, drove for at least 30 minutes. Kidnapping for robbery requires that the perpetrator have the specific intent to commit robbery. (*People v. Tribble* (1971) 4 Cal.3d 826, 830-832.)

When Vargas resisted climbing into the trunk, Ramirez and Hubbard threatened to shoot him. While in the trunk, Vargas was worried he was going to be shot. *Toledo, supra,* 26 Cal.4th at pages 227-228 enumerates the elements necessary to prove the offense of making criminal threats under section 422. The prosecution must prove "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]"

The trial court reasonably could have found from these circumstances that Ramirez and Hubbard's intent initially was to carjack Vargas and the specific intent to commit kidnapping for robbery was formed as the incident progressed. The purpose of the initial assault was to obtain control of the vehicle; the objective later became to rob and kidnap Vargas. The objective in threatening Vargas before he climbed into the trunk was to instill fear—a distinctly separate intent from the required intent to commit kidnapping for robbery. Since the record supports the trial court's implicit finding that

Ramirez and Hubbard had separate objectives in committing each offense, the trial court did not violate section 654 when it imposed consecutive punishment for counts 7, 9, and 10. (Cf. *Solis, supra,* 90 Cal.App.4th at p. 1022; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1656-1658.)

### *Enhancements*

Ramirez and Hubbard contend the trial court erred in imposing both the firearm and gang enhancements on counts 9 and 10. The People agree, and so do we.

In *People v. Rodriguez* (2009) 47 Cal.4th 501, 508-509, the California Supreme Court held that when a defendant is convicted of a violent felony within the meaning of section 667.5, subdivision (c)(8), based upon the defendant's use of a firearm under section 12022.5, a trial court's imposition of both the section 12022.5 enhancement and the section 186.22, subdivision (b)(1)(C) enhancement violates section 1170.1, subdivision (f). The California Supreme Court concluded that the proper remedy was not to strike one of the enhancements, but to remand for resentencing. (*Rodriguez,* at p. 509.) A remand allows a trial court to restructure its sentencing choices. (*Ibid.*)

Here, the trial court imposed both the section 12022.5 enhancement and the section 186.22, subdivision (b)(1) enhancement on counts 9 and 10, in violation of section 1170.1, subdivision (f).

The second part of Ramirez and Hubbard's contention on imposition of punishment on the enhancements is that the trial court correctly stayed imposition of punishment on the firearm enhancements appended to counts 7 and 10 pursuant to section 654, but erred in imposing punishment on those underlying offenses. They argue punishment for counts 7 and 10 also should be stayed pursuant to section 654.

The California Supreme Court has determined that section 654 applies to enhancements and can operate to bar imposition of punishment of multiple enhancements tied to a single offense based upon the same act. (*People v. Ahmed* (2011) 53 Cal.4th 156, 162-164.) We have concluded, however, that section 654 does not operate to bar

19.

consecutive sentences for counts 7, 9, and 10 because they had different objectives and intent. As for the punishment to be imposed on the various enhancements appended to these counts and the application of section 654, we decline to address this issue further in this appeal because the sentence will be vacated and the matter remanded for resentencing in light of the violation of section 1170.1, subdivision (f).

### *Custody Credits*

Hubbard claims he is entitled to six additional days of custody credit. Hubbard was arrested in Sacramento on April 28, 2010. He was booked into the Kern County jail on May 3, 2010, and presentence custody was calculated from that date.

The People agree, and so do we, that Hubbard is entitled to six additional days of custody credit, as it appears he was not credited with time from the date of his arrest in Sacramento County but only from the time he was in custody in Kern County.

## DISPOSITION

As to appellant Ramirez, the count 5 and 6 convictions are reversed. The convictions on the remaining counts and the true findings on the enhancements are affirmed. The sentences are vacated and the matter remanded for resentencing.

_____
CORNELL, Acting P.J.


WE CONCUR:


_____
GOMES, J.


_____
DETJEN, J.

20.